COMMONWEALTH, by Insurance Commissioner, *vs.* MASSACHU-SETTS MUTUAL FIRE INSURANCE COMPANY. Charles B. Cumings, petitioner.

COMMONWEALTH, by Insurance Commissioner, *vs.* UNION MUT-UAL FIRE INSURANCE COMPANY. George G. Field, petitioner.

COMMONWEALTH, by Insurance Commissioner, *vs.* MASSACHU-SETTS MUTUAL FIRE INSURANCE COMPANY. John A. Lowell, petitioner.

COMMONWEALTH, by Insurance Commissioner, *vs.* UNION MUT-UAL FIRE INSURANCE COMPANY. John A. Lowell, petitioner.

Neither the insolvency of a mutual fire insurance company, nor the cancellation of a policy, deprives the company of the right to assess upon the policy holder losses that accrued while he was a member of the company.

The St. of 1864, *c.* 196, which provides that the conditions of insurance shall be stated in the body of a policy of fire insurance, does not apply to the obligations of the insured as a member of the corporation.

The liability to assessment of a policy holder in a mutual fire insurance company is not in accordance with the proportion of the expired to the unexpired term of the policy, but in accordance with the liabilities of the company.

When the losses by fire suffered by a mutual fire insurance company render it insolvent, and require an assessment to the full amount authorized by law, the holder of an unexpired policy, the cancellation of which has been rendered necessary by such insolvency, has no right of set-off, or of recoupment, or claim for return of premium, or for damages on account of the unexpired term of his policy.

The holder of a policy in a mutual fire insurance company which has been cancelled while the company was solvent, and who by his contract with the company is entitled to a return premium, has a right, in case of the subsequent insolvency of the company and the distribution of its assets by receivers, to share in the assets.

When a mutual fire insurance company has become insolvent, the previously accrued profits which have been credited to the policies do not belong to the policy holders, but are funds for the payment of losses.

The St. of 1863, *c.* 249, § 4, which allows the directors of mutual fire insurance companies to make two assessments between which policy holders may elect, is permissive, and moreover does not apply to an assessment made to close the affairs of a company.

A policy holder in a mutual fire insurance company is liable to assessment while his policy remains uncancelled, although he has and has had no insurable interest under, or right to recover upon, the policy.

A person who has neither taken a policy in a mutual fire insurance company, nor signed an application, nor paid a premium, is not a member, and in case of the insolvency of the company, is not liable to assessment.

An assignee of a policy in a mutual fire insurance company who is entitled to the benefit of the insurance is liable to assessment in case of the company's insolvency.

Gen. Sts. *c.* 58, § 48, which direct the manner of making assessments upon the members of insolvent fire insurance companies, do not deprive a company chartered in 1798 of the right to assess in the manner provided by its charter.

AN APPLICATION under Gen. Sts. *c.* 58, § 6, was made to this court by the Insurance Commissioner against each of the defendant companies, representing that upon an examination had by him he was of opinion that it was insolvent, and that its condition was such as to render its further proceedings hazardous to the public and to those holding its policies, and praying that an injunction might issue restraining it wholly from proceeding with its business, and asking for the appointment of receivers. In each case such an injunction issued, and receivers were appointed. Subsequently the injunction in each case was so far modified as to authorize the corporation to choose officers and to do all acts necessary to continue its corporate existence until its concerns were fully and finally closed, and to authorize the directors to lay such assessments, according to the provisions of law as might be necessary to pay the liabilities of the corporation.

Afterwards Charles B. Cumings, the president of the Massachusetts Mutual Fire Insurance Company, and George G. Field, the president of the Union Mutual Fire Insurance Company, severally petitioned this court, under St. 1862, *c.* 181, representing that the directors of the company had made an assessment, and that he, at the request of the receivers of the company, petitioned the court to examine the assessment, the necessity therefor, and all matters connected therewith, and to ratify the assessment with such amendments, if any, as might be necessary, and make such decrees in the premises as might be required.

By order of court each petition was referred to Charles Allen, Esquire, as auditor, to hear the parties and report upon the correctness of the assessments and all matters connected therewith. The auditor made a report in each case, and both reports were reserved for the consideration of the full court for such decree, order or further direction therein as should by the court be deemed proper.

By the auditor's reports it appeared that at the hearings before him many holders of policies in the respective companies appeared and raised objections to the validity of the respective assessments according as such assessments affected their various supposed rights. The nature of these objections sufficiently appears in the opinion of the court.

John A. Lowell, a policy holder in each of the companies, also filed a petition in this court against each of the companies, representing that the directors of the company had levied an assessment upon its policy holders of the whole sums which by the terms of their policies they were bound to pay, and claiming that he was entitled to prove as a creditor of the company for the amount of the value of the unexpired term of his policy, and of the unearned premium and deposit which, upon a proper com parison of the amount of his payments with the length of the term of his policy and of its unexpired portion might appear to be due to him on the policy, and praying that the receivers might be directed to adjust and admit to proof this claim against the assets of the company. These petitions were also reserved for the consideration of the full court, and the four cases were argued together.

*J. G. Abbott & G. Putnam, Jr.*, for Lowell, petitioner, and for sundry policy holders who were not losers by fire.

*H. G. Parker*, for various policy holders.

*C. T. Russell & S. J. Thomas*, for other policy holders.

*B. F. Brooks*, for certain policy holders whose policies had been renewed but not delivered.

*C. G. Davis*, for a policy holder who claimed that his policy had never attached.

*G. D. Noyes*, for some policy holders who had alienated the insured property before the assessment.

*S. Bartlett & G. O. Shattuck*, for the receivers of the companies.

WELLS, J. These four cases were argued together. It will be more convenient to consider and dispose of them together, inasmuch as the question, upon which the greater part of the discussion was had, is presented in one form or another in all of

them; to wit, what, in the present condition of affairs, are the rights of policy holders in respect of their claims for return premiums, or for the loss of the value of the unexpired terms of their policies? All further business of the corporation is suspended by the injunction and appointment of the receivers, upon the intervention of the Insurance Commissioner. The proposed assessment will exhaust the power of the corporation, and deprive it of all means to pay future losses, and to fulfil its contract of indemnity with policy holders who have not already suffered loss. All policies have accordingly been cancelled.

The amount of claims for losses alone, over and above all present assets, in the case of the Union Company exceeds the whole amount that can be assessed; and in the case of the Massachusetts Company, may absorb the entire net proceeds of the assessment. These claims, then, are sufficient to justify the assessment to the full extent of the power, without including those for return premiums. It is not necessary, therefore, to decide whether an assessment, beyond the deposit note, can be made, or enlarged, for the purpose of satisfying claims for return premiums.

In the first two cases named, upon the petition to have the assessment ratified and established, the question of the rights of holders of unexpired policies is presented in several aspects.

1. It is contended that the contract is entire and mutual; and that the company, having become incapable of performing its obligations, cannot enforce those of the other party.

2. That the cancellation of the policies discharges the contract, and defeats all right to enforce it against policy holders.

3. That the contract is a continuing one of indemnity on the one side and of contribution on the other, through a period of seven years, or for the term fixed by the policy; and that, to make it effectual, the liability to contribution must be construed to be distributed through the whole period. Upon this ground it is claimed that the liability of each policy holder to assessment, beyond his deposit note, must be apportioned according to the ratio of the expired and the unexpired portions of the term of his policy.

The same proposition is stated in another form; namely, that the fund provided for payment of losses, in a mutual company, consists only of the premiums earned; and that money to be raised by assessment is to be regarded as in the nature of premium, to be availed of only so far as earned; that is, in proportion to the period elapsed at the time the assessment is made.

4. That the loss of the unexpired term of the policy furnishes ground for set-off or recoupment of a claim for return premium, or of damages equivalent to what would be required to procure reinsurance for the same time.

5. In the cases of Lowell, petitioner, the assessment to the full extent of his liability having been paid, he seeks to be allowed to prove his claim against the assets that will be for distribution, " as a creditor for the amount of the value of the unexpired term of his said policy, and of the unearned premium and deposit which, upon a proper comparison of the amount of his said payments with the length of the term of his said policy, and of the unexpired portion thereof, may appear to be due to him upon said policy."

As to the first and second of these propositions, it has already been settled that neither the insolvency of the corporation nor the cancellation of its policies will deprive the corporation of the right, or relieve its officers of the duty, to assess, upon those who were members, all losses that occurred while they were members. *Alliance Insurance Co.* v. *Swift*, 10 Cush. 433. *Marblehead Insurance Co.* v. *Underwood*, 3 Gray, 210. *Fayette Insurance Co.* v. *Fuller*, 8 Allen, 27. The right to assess, notwithstanding the cancellation of the policy, is clearly to be implied from the provision limiting the right to the period of two years after such cancellation. Gen. Sts. *c.* 58, § 54; St. 1865, *c.* 10.

The solution of the other propositions is to be found in the peculiar nature of the contract of mutual insurance — or rather the contracts; because it is twofold, corresponding to the twofold relation which subsists between members of a mutual insurance company, or between each member and the whole body of members constituting the corporation. Each member is, at the same time, insurer and insured. In one aspect he is a mere

holder of a policy, containing a contract of indemnity against loss by fire, with a specific and limited fund out of which that indemnity is to be made good. In case of loss, he has a claim and right of action against the corporation, as in other forms of insurance; and the statutes also provide means by which he may compel the appropriation of the specific fund to the satisfaction of his claim.

In another aspect he is a member of the corporation, made so by the very nature of the contract, and so declared by law. Gen. Sts. *c.* 58, § 43; St. 1872, *c.* 230. In this relation, he is an insurer, and is affected by another and very different class of obligations. As a member, his rights and liabilities are defined partly by the contract contained in the policy, partly by the statutes, and partly by the by-laws of the corporation.

The Statute of 1864, *c.* 196, is applicable to his contract in the former aspect, and not in the latter. It affects the determination of his right of action, in case of loss; of the validity and amount of his claim, under the contract of indemnity with him as a party insured. But it has no reference to the relation of membership, which results from the fact of accepting a policy in such a company, nor to the obligations on his part not affecting his right of recovery. To hold otherwise would require the deposit note to be extended in full upon the face of the policy.

The right to regulate the conduct of its business by means of by-laws, which belongs to corporations generally, is secured by law to every mutual insurance company. Gen. Sts. *c.* 58, § 16. So far as such by-laws pertain to the rights, duties and obligations of a policy holder, in his relations to the corporation as a member thereof, they are not affected by the St. of 1864, *c.* 196.

The rights and obligations or liabilities of the holder of a policy of mutual insurance, so far as they depend upon contract, are to be ascertained not merely by the terms of his own contract with the corporation, but in view of the consideration that every other member or policy holder has a like contract. The contract of each contains obligations on the part of the corporation, which enter into and qualify the contract of every other; the corporation representing to each only the aggregate of the others. The rights

of each member qualify the rights, and to some extent measure the obligations and liabilities of the others.

The liability to assessment is defined in the policy by a recital, in the case of the Massachusetts Company, that the assured has, " agreeably to the rules of the company," " become bound and obliged to pay, in addition to the premium and deposit, all such sum or sums as may be assessed by the president and directors of said company, pursuant to the act of incorporation, but not in any event to exceed " a sum named, being twice the amount of premium and deposit. In the case of the Union Company, the recital is the same in substance, with a reference to the laws of Massachusetts instead of the act of incorporation, and the limit being " the amount of the said premium and deposit."

By the act of incorporation of the Massachusetts Company, it is provided that " in case any member should sustain damage by fire, over and above the then existing funds of the said corporation, the directors may assess such further sum or sums upon each member as may be in proportion to the sum by him insured, and the rate of hazard originally agreed on; provided, however, that no member, during the term of seven years, shall be held to ·pay, by way of assessment, more than two dollars for each dollar by him advanced as premium and deposit."

Art. 12, of the by-laws, or " amended rules and articles of the company," contains the following: " To place the property insured upon a solid foundation, each member shall be held to pay, by way of assessment, in case losses should happen so as to consume the absolute fund, at the discretion of the president and directors, during the term of seven years, a sum not exceeding two dollars for each dollar paid as premium and deposit money."

There appears to be no by-law of the Union Company upon the subject.

The provision of Gen. Sts. *c.* 58, § 48, is: " When the just claims against a mutual fire insurance company exceed the funds, its directors shall assess such sums as may be necessary upon the members, in proportion to their premium and deposit, no member being liable to pay, in addition to his premium and deposit, more than a sum equal to his said premium and deposit."

The obligation of the corporation which the insured is entitled to enforce is, as set forth in the policy of the Massachusetts Company, " to satisfy and make good, from the absolute and conditional funds of the company, unto the said assured, all the damage by fire which may happen to said real estate, within the term aforesaid, according to the true intent and meaning of said rules. Provided, nevertheless, that if the whole of the absolute and conditional funds of said company should be insufficient to pay and satisfy all damages that may happen, in such case a just average shall be made to the sufferers, and the payment to be demanded in virtue of this policy shall be a dividend of said stock, in proportion to the sum insured and the rate of damage." By the policy of the Union Company, " the absolute and conditional funds of said company are hereby bound and subjected to satisfy and make good unto the said insured " whatever loss by fire may happen during the term thereof; and in case of insufficiency of those funds " to pay and satisfy all losses that may happen, in such case a just average shall be made to the sufferers, and the payment to be demanded, in virtue of this policy, shall be such a proportion of said funds as the loss sustained by the party hereby insured bears to the whole amount of losses then remaining unpaid."

By another provision of Gen. Sts. *c.* 58, § 48, the directors are made personally liable for the amount of an execution against the corporation, if they " neglect for thirty days, after the rendition of judgment, to make an assessment and deliver the same to the treasurer for collection." A similar provision is contained in the act incorporating the Massachusetts Company.

Whether we regard the provisions which secure to the policy holder his indemnity in case of loss, or those which define the liability of members, we find no support for the position that the limit which is affixed to that liability is intended to be still further narrowed by subdivision according to the time, within the period of each policy, when the assessment occurs. On the contrary, the power of assessment is treated as providing a reserved fund, to be drawn upon at once whenever the immediate fund, arising from premiums and deposits, is exhausted. Every

assessment is required to be " in proportion to their premium and deposit " upon all members alike, who are liable at all, until the full limit is reached. It is obvious that this rule will not admit of any graduation by the age of the respective policies.

The statutes contemplate the possible exhaustion of the entire fund, and the insolvency of the corporation. Provision is made in the St. of 1863, *c.* 249, § 4, for guarding against this result, and securing the future indemnity of those who may remain members, by restoring the impaired capital and renewing the basis of their continued mutual insurance.

A careful survey, not only of existing provisions of law, but also of those through which the system of mutual insurance has been developed from the rules and practices of particular associations, and the regulations of special charters, adopted and made uniform, at a later period, in general laws, leads us to conclusions applicable to these cases as follows :

The liability to assessment at any time, within the limit fixed by the statute, is measured only by the amount of the losses for which the company is then responsible. It is not apportionable according to the ratio of time of the expired and the unexpired term of the policy. The assessment cannot be reduced, or a part of it withheld, to provide future indemnity for members who have not already suffered loss. The whole proceeds of the conditional fund thus provided, as well as the absolute funds, are pledged to satisfy and make good the losses that have occurred. Each one in turn who suffers loss is entitled to the full benefit of this pledge, according to the state of those funds when his loss occurs ; this forbids any reduction of the fund, when the whole is required to cover losses, either by apportionment, set-off or otherwise.

In case of insufficiency, " a just average shall be made to the sufferers," each one receiving a share of the fund in proportion to the amount of his loss. This rule, established by the contract of the corporation with all its members alike, does not permit a set-off even between the company and those who have claims for losses upon which they are entitled to a distributive share of the proceeds of the assessment. Upon the same grounds the fund, thus pledged to make good losses by fire, cannot be

reduced by allowing claims of this nature, in favor of other mem-
bers who have not suffered loss, to participate in the distribution,
and thereby defeat or impair the promised indemnity.

Claims for return premium stand upon footings varied accord-
ing to the terms of the particular contract, and the time and cir-
cumstances of the cancellation. Assuming that such a claim,
when the cancellation is made necessary by insolvency, or by
losses resulting in suspension and settlement through a receiver
of the court, is to be regarded as belonging to the same period
with the losses themselves, yet, in the absence of particular agree-
ments, the foundation of such a claim is not obvious. The ap-
propriation of the fund is contemplated by the nature of the
association; its exhaustion results from the limit fixed by statute,
which becomes an element in the contract, even when not ex-
pressly contained therein. No "just claim" against the company
arises from the fact that all future indemnity is thus practically
rendered ineffectual. In that condition of things, if the party
would be entitled, on any ground, to maintain an action, or prove
a claim, for the loss of his unexpired term by the cancellation of
his policy, it would seem that the measure of his damages must
be reduced to a minimum.

These suggestions do not apply to the case of a cancellation
effected before the occurrence of losses, whereby the party is
relieved from liability to assessment, and his claim has already
become fixed as a debt against the solvent company.

The contract itself may also give to such parties a valid claim
for a definite amount, capable of proof and allowance as a debt
or " just claim," against the company in liquidation. That was
so in the case of *Fayette Insurance Co.* v. *Fuller*, 8 Allen, 27.
The by-laws provided that, in case of cancellation, " the insured
shall receive the return premium in accordance with the table of
short rates." It was held by the court that " each member, in
taking his policy, took it subject to the claims of the other policy
nolders to receive a return premium." It is to be observed, also,
that there was no deficiency of assets in that case, and therefore
no question of priority could arise.

The remark in *Citizens' Insurance Co.* v. *Sortwell,* 10 Allen, 110 that a cancellation " would of course make a return of a portion of the premium, which had been paid on unexpired policies, due to the holders of such policies," and that " it would be proper to raise the money by assessment " for its repayment, was casual, and as suggested by the justice giving the opinion, " not important in the [then] present case." It forms no part of the adjudication. The report does not show whether there was anything in the contract upon which the remark was based.

In the case of the Massachusetts Company there is no provision in the contract, as expressed upon the face of the policy, for any return premium, or other compensation for the loss of the holder by its cancellation. But by the " amended rules and articles " attached to the policy, art. 19, " The company reserve the right of cancelling any policy, . . . . and the assured shall be entitled to receive his premium and deposit money, subject, however, to the losses and expenses of the company, and entitled to his proportion of the gains."

In the case of the Union Company the policy provides, upon its face, " that the company have the right of cancelling any policy, at any time, when two thirds of the directors present at any meeting shall deem there is sufficient cause therefor ; " and, in such case, " the insured shall be entitled to receive the dividend due to his policy." That dividend, being the result of an account of profit and loss, made up as of the time of the cancellation, cannot, of course, be brought into competition with claims for losses in the general distribution which is to be made. In either case the claim is not one for which an assessment can be made or enlarged, or which can be allowed for any purpose of distribution to the prejudice of the claims for losses by fire.

But as there may remain some surplus, after adjusting and satisfying all other demands, for the purpose of a distribution of any such surplus, the claim should be received and adjusted with a view to a proper basis of such supplementary distribution.

Several other questions are presented upon the auditor's report in the first two of the cases under consideration.

It was contended that profits which accrued prior to the great fire, and were credited monthly to each policy, had thereby been separated from the general funds of the corporation and become the separate fund of each member. But this was merely a computation of the relative interests of the members, as affected by the current business of each month. As a credit it was contingent upon the completion of their respective terms. It was a convenient mode of adjusting the accounts in view of the constant recurrence of new and expiring policies. These accumulated profits remained as the absolute funds of the corporation, pledged to the payment of losses, until by expiration or cancellation of the policy its holder became entitled to withdraw the balance, after charging for losses, as the " dividend due to his policy." The members are entitled to a dividend only of such profits as remain or are shown upon a valuation of their policies at the termination of their membership.

It was also contended that the only mode in which the assessment could properly be laid was according to the provisions of St. 1863, *c.* 249, § 4. That statute, however, is permissive and not obligatory. The assessments therein provided for are adapted to the purpose of reinstating the corporation in a sound condition for continuing its business, and not of closing up its affairs.

In regard to the other questions, common to the two companies, which are presented by the auditor's report, it is sufficient to say that acts of policy holders which might entitle the corporation to defend against claims for losses, do not necessarily release such parties from liability to assessment as members. So long as the policy remains uncancelled, they cannot take advantage of want of insurable interest, whether it existed originally or was occasioned by destruction or removal of the building insured, or by alienation ; nor of a misdescription of the property insured, or its mode of occupation ; nor of their loss of the right to recover upon the policy by reason of other insurance not assented to. They are members of the corporation, notwithstanding such grounds of defence to a suit for recovery of a loss. Their subscription to its capital forms in part the basis upon which the company is authorized to engage in the business, and upon which other

parties insured depend for their indemnity. *New England Insurance Co.* v. *Belknap*, 9 Cush. 140.

But members only are liable to assessment. Persons who have neither taken a policy nor signed any application or deposit note, nor paid the premium, are not members, and cannot properly be included in the assessment.

Assignees of a policy, who have been substituted to all the rights of the original assured, with the assent of the company, thereby become members and are liable to assessment. What acts or facts will constitute such substitution, in any particular case, must be determined by the provisions of the contract, or of the by-laws or rules of the corporation. The statutes simply provide that " every person insured by the company shall be a member." Gen. Sts. *c.* 58, § 43; St. 1872, *c.* 230. In cases of absolute alienation of the property insured, therefore, whatever gives to the alienee the benefit of the insurance, will, by force of the statute, impose upon him the liability to assessment.

By the original rules and articles of the Massachusetts Company, the alienee of the estate, and of the policy, was required to give " his engagement in writing to assume all the liabilities imposed by the same," or the policy became void. But it appears from the supplemental report that since 1852, in pursuance of a vote of the directors adopted at that time, transfers have been made upon the copy of the policy retained by the company, and an abstract or certificate indorsed upon the original, as follows, viz : " Transferred as record policy to

of                                                    by

      Attest                                        Secretary."

The delivery of such a policy to the purchaser of the property insured, and its acceptance by him, with the intent and understanding of all parties that thereby the insurance was continued upon the property for the benefit of the purchaser, would constitute him a member of the corporation, subject to all the liabilities of a member, in the same manner and to the same extent as if it were a new policy issued to himself. It is to be observed that, by the form of the policy, as well as by the " rules and articles " of this company, both premium and deposit are

paid in money, upon execution of the policy; so that there are no liabilities to be assumed by the assignee except such as result by law from the fact of membership, by holding the policy.

The policy of the Union Company provides that upon alienation of the estate, " the purchaser having this policy legally transferred to him may, upon application, have the policy revived with the consent of the president expressed in writing; and by such revival the company and such purchaser shall be entitled to all the rights to which the original parties respectively were entitled before such alienation: Provided, always, that such purchaser shall give a new deposit note in lieu of that given by the original insured, which shall be thereupon surrendered."

From the supplemental report of the auditor, it appears that in some cases the entire consideration for the insurance is paid, so that no deposit note is given. In such cases the assignee of the policy is not required to sign any note or other writing, but the transfer of the policy, with the written assent of the president, recorded in the books of the company, and its delivery to and acceptance by the purchaser of the estate, are regarded as sufficient to constitute him a member, and to make the insurance effectual for his protection. Such, doubtless, would be the effect of the course of proceeding described.

By the charter of the Massachusetts Company, granted March 1, 1798, the limit of liability of each member to assessment was fixed at " two dollars for each dollar by him advanced as premium and deposit." St. 1797, *c.* 67, 2 Special Laws, 211. The " rules and articles," art. 12, prescribe the same measure of liability; and the policy recites that the assured " has become bound and obliged to pay, in addition to the premium and deposit, all such sum or sums as may be assessed," not exceeding that amount. The assessment is accordingly made for twice the amount of premium and deposit.

It is contended that the provisions of the Gen. Sts. *c.* 58, § 48, control those of the special act of 1798, and deprive the corporation of its former right to assess in double the amount. Assuming that they might have that effect if so intended, we think it mani

fest, from the whole course of legislation upon the subject, that such was not the intent.

The general provisions relating to insurance companies contained in this chapter of the General Statutes, are prefaced by the declaration in § 12, that they " may exercise the powers and shall be subject to the duties and liabilities provided in this chapter so far as consistent with their respective charters." A similar provision was contained in the Rev. Sts. *c.* 37, § 1. The provisions of that chapter relating to mutual insurance were expressly made applicable only to those " which shall hereafter be incorporated, or whose charters shall be extended." Rev. Sts. *c.* 37, § 24. Previously to 1835, all laws regulating mutual insurance were embodied in the respective acts of incorporation. The charter of the Massachusetts Company was granted without limit of duration. We find no other act of incorporation of any existing company, of earlier date than 1823. From that time until the adoption of the Revised Statutes, or until 1835, all charters of mutual companies were limited to periods ranging from twenty to thirty years; they were mostly for twenty-eight years. In 1835, certain general provisions relating to mutual insurance were adopted, (St. 1835, *c.* 147, April 8,) which were incorporated in the Revised Statutes; § 1 of that act being of the same purport with § 24 of Rev. Sts. *c.* 37. Charters subsequently granted confer merely the right of corporate existence, with powers and duties as defined in the general laws. The phraseology originally adopted, and repeated in § 24 of Rev. Sts. *c.* 37, was necessarily omitted in the General Statutes and in the St. of 1856, *c.* 252, not only because of the corporations created in the mean time, but because nearly all those previously created had become, or would soon become subject exclusively to the general laws, by the expiration of the original period of their charters. This explains the absence of that particular qualification from the language of the General Statutes, consistently with the continuance of the same intent as to the application and effect of the provisions, as indicated also by the language of § 12 already quoted.

We think it clear that the act of 1798 is not controlled by Gen. Sts. *c.* 58, § 48; and that the assessment in this, as in other respects, is correctly made. *Decrees accordingly.*