### SAMUEL H. DOANE

*v.*

### THE MILLVILLE MUTUAL MARINE AND FIRE INSURANCE COMPANY.

On September 21st, 1885, a bill was filed against the defendant, a mutual fire and marine insurance company, under which it was afterwards decreed to be insolvent, a receiver appointed, and a reference made to have its condition and the amount of its fire and marine losses ascertained. On exceptions to the master's report—*Held*,

(1) That, whether or not the company had a right, by virtue of its charter, to keep the two kinds of insurance and the assets of each department distinct,. the fact that it had adopted a by-law to that effect and so notified each policy-holder and so advertised, and always kept the assets separate, estopped the policy-holders and creditors from now questioning the legality of such course.

.(2) That a policy-holder could not, after the company· had in fact become insolvent, by an agreement with the officers of the company and paying a small percentage, obtain a cancellation of his policy and a surrender of his premium notes, and thus escape all future liability to assessment thereon, although the company had not then been declared to be insolvent.

(3) That, under *Rev. p. 191 § 80,* a *bona fide* judgment creditor is entitled to preference in payment over the general creditors ; but that such preference does not include a judgment obtained against the company on the day when the court took control thereof by issuing an order restraining the company from transacting business.

(4) That, where a loss occurred after the appointment of the receiver, such policy-holder is not entitled to share in the distribution of the assets.

---

*Mr. D. J. Pancoast,* for Messrs. Lemy and Blight.

Doane v. Millville Mutual Ins. Co.

*Mr. S. H. Grey,* for defendant Woods.

*Mr. J. H. Nixon,* for the insurance company.

BIRD, V. C.

The defendant company is an insolvent corporation. On the 21st day of September, 1885, a bill was filed setting forth the inability of the company to pay its debts. An order to show cause why a receiver should not be appointed, together with an order restraining the company from performing any duties whatsoever devolving upon it, was issued. Upon the return of the order, a receiver was appointed and an injunction awarded. Soon after, a reference to ascertain the true condition of the company, the nature and extent of its liabilities, and to report the extent

NOTE.—A statute required five days' service of a summons in a justice's court. The writ was served at half-past three o'clock on December 3d, and returnable at three o'clock December 8th.—*Held,* defective, *Pedrick* v. *Shaw, Pen.* (*N. J.*) *57;* but see *Columbia Road* v. *Haywood, 10 Wend. 423; Hemming* v. *Brabason, Bridg. C. P. 8; Faulds* v. *People, 66 Ill. 210.*

A defendant in a justice's court may plead that he had brought an action against the plaintiff earlier the same day before another justice, *Johnson* v. *Pennington, 3 Gr. 188; Dickinson* v. *Lee, 2 Coldw. 615.*

If the defendant's object in keeping back his plea is delay, the court may refuse to set aside a judgment by default, although it was entered an hour after the plea had been filed, *Rogers* v. *Beach, 18 Wend. 533; Brainard* v. *Hanford, 6 Hill 368;* see *Havens* v. *Dibble, 18 Wend. 655; Bangor* v. *Somerville, 1 N. J. L. J. 252,* Depue, J.

. A declaration on promises alleged to have been broken on November 7th, 1785, the first day of the term, is good, because the declaration could not, in law, be delivered until the sitting of the court at ten o'clock on that day, and the promises may have been broken at an earlier hour, *Pugh* v. *Robinson, 1 T. R. 116;* see *Combe* v. *Pitt, 3 Burr. 1434; 23 Am. Law Reg.* (*N. S.*) *258; Swift* v. *Crocker, 21 Pick. 241; Church* v. *Clark, Id. 310; Smadbeck* v. *Sisson, 31 Hun 582;* and so of a declaration for slander, *Symons* v. *Low, Styles 72;* or in ejectment, *Roe* v. *Hersey, 3 Wils. 274;* see *Doe* v. *Spencer, 11 East 495;* or in replevin, *Knowlton* v. *Culver, 2 Pinn.* (*Wis.*) *243.*

A statute requiring an appeal to be filed before the next term, is complied with if it be filed before ten o'clock on the first day of the next term, *Vanlear* v. *Vanlear, 1 Binn. 76.*

Where a statute authorized a judgment by confession only, in vacation, one confessed before ten o'clock on the first day of the term is valid, *Brown* v. *Hume, 16 Gratt. 456.*

of its obligations, by way of marine losses, and also by way of losses by fire, was made. The master having made his report, exceptions thereto have been presented. One important exception is in these words:

"That the said master has certified that the losses that occurred under the mutual marine policies can only be collected from the assets of the mutual marine; that the amount of the different parties for losses that occurred under mutual fire policies can only be collected from the assets of the mutual fire. Whereas he ought to have certified that losses that occurred under mutual marine policies can be collected from the assets of the mutual marine and mutual fire, and that the amounts due the parties for losses that occurred under mutual fire policies can be collected from the assets of the mutual fire and mutual marine."

This presents the judgment of the master, as it appears by his

A rule to discharge a defendant in custody is a good defence to an action for an escape, although the defendant went out before the sitting of the court which granted such rule, *Field* v. *Jones, 9 East 151.*

The court may inquire whether in fact the cause of action accrued on the same day but before the writ issued, *Clarke* v. *Bradlaugh, L. R. (7 Q. B. D.) 151, (8 Q. B. D.) 63.*

A copy of a declaration may be served before the original is filed, if on the same day, *Hughes* v. *Patton, 12 Wend. 234; Rusk* v. *Van Benschoten, 1 How. Pr. 149.*

A jury in giving their verdict may count the fractions of a day during which the defendant unlawfully obstructed a highway, *Ferris* v. *Ward, 9 Ill. 499.*

The hour when an application was made to remove a cause from a state court to a federal court may be shown, *Maine* v. *Gilman, 11 Fed. Rep. 214.*

A *certiorari* to remove a justice's judgment may be delivered to him before he has actually entered such judgment, *Delancy* v. *Lawrence, 6 Hal. 25, 102; Mairs* v. *Sparks, 1 South. 369, 2 South. 516;* see *Morris Canal Co.* v. *Mitchell, 2 Vr. 99.*

Judgments entered the same day create concurrent liens, *23 Am. Law Reg.* (N. S.) *258; Petrie* v. *Lord Porchester, 1 T. R. 116 ; Bliss* v. *Watkins, 16 Ala. 229; Syath* v. *Ship, 1 How. (Miss.) 234; Reed* v. *Haviland, 38 Miss. 323; Bruce* v. *Vogel, 38 Mo. 100; Emuel* v. *Garwood, 4 Dall. 321, note ; Anderson* v. *Tuck, 33 Md. 225; Porter* v. *Earthman, 4 Yerg. 358.* Contra, *Lippencott* v. *Wilson, 40 Iowa 425; Marvin* v. *Marvin, 75 N. Y. 240; Janney* v. *Stephen, 2 Pat. & H. 11 ; Brockenbrough* v. *Brockenbrough, 31 Gratt. 580;* see *Lyttleton* v. *Cross, 3 B. & C. 317; Roberts* v. *Roberts, 8 Rich. 15; McClean* v. *Rockey, 3 McLean 235;* unless the clerk is required by statute to note thereon the precise time of its receipt or rendition, *Bates* v. *Hinsdale, 65 N. C. 423; Griffin* v. *Forrest, 49 Mich. 309; Seaman* v. *Eager, 16 Ohio St. 210; Metts* v. *Bright, 4 Dev. & Bat. 173; Hale's*

report, and the objections thereto. The question raised is serious enough. Let us look at it. In so doing, we must consider the charter, the by-laws, and the nature of the company, and the conduct, both of it and of its members, for a long period of its existence.

Its charter was obtained in the year 1859. *P. L. of 1859 p. 144.* By this it was provided that the said corporation was incorporated " for the purpose of insuring their respective vessels,. buildings, household furniture, merchandise and other property against loss or damage by sea or fire." They were authorized to pass by-laws, for the purpose of carrying into effect the object had in view by the charter. Section 8 of their by-laws provided that the company should keep the marine and fire accounts separate, and declared that the company should be assessed to pay losses in-

---

*Appeal, 44 Pa. St. 438; Wilson v. Greenwood, 5 Houst. 519;* or certain office hours are fixed by statute, *France v. Hamilton, 26 How. Pr. 180; Polhemus's Appeal, 32 Pa. St. 328;* and so as to a judgment and a mortgage, *Claason's Appeal, 22 Pa. St. 359; Hendrickson's Appeal, 24 Fa. St. 363; Follett v. Hall, 16 Ohio 111; Holliday v. Franklin Bank, Id. 533; Stagg's Case, 1 Nott & M. 405;* see *Morris v. White, 9 Stew. Eq. 324; Hollingsworth v. Thompson, 5 Harring 432;* and a judgment and a set-off, *Collins v. McKee (Pa.), 10 East. Rep. 743;* and a judgment and a deed, *Whitaker v. Wisbey, 12 C. B. 44; Clawson v Eichenbaum, 2 Grant's Cas. 130; Hoppock v. Ramsey, 1 Stew. Eq. 413; Duke v. Clark, 58 Miss. 465, 477, 59 Miss. 575;* and a judgment and a mechanics lien, *Hunt v. Miller,. (N. J. Chan.), Jan., 1883.* Williams, A. M.

A purchaser at sheriff's sale holds the title against the defendant's grantee whose deed was filed for record one hour and twenty minutes after the judgment, *Jones v. Luck, 7 Mo. 551;* see *Smull's Appeal, 24 Pa. St. 398; Finley v. Smith, 2 Ired. 225.*

As to sheriffs' sales of chattels, see *Berry v. Clements, 9 Humph. 312, 11 How. (U. S.) 398; Woodland v. Fuller, 11 Ad. & El. 859; Whyte v. Treadwell, 17 U. C. C. P. 488; Metts v. Bright, 4 Dev. & Bat. 173; Cox v. Hodge, 1 Swan 371; Bachman v. Sulzbacher, 5 Rich. (N. S.) 58.*

A deed given on the first day of the term will be prior to a judgment obtained against the vendor during such term, if the first sitting of the court was on the third day of that term, *Skipwith v. Cunningham, 8 Leigh 271;* see *Withers v. Carter, 4 Gratt. 407.*

As to a judgment by confession, entered the same day the defendant therein died, see *Lanning v. Pawson, 38 Pa. St. 480; Boyer's Estate, 51 Pa. St. 432;* and judgments in being docketed, *Bates v. Hinsdale, 65 N. C. 423; Grantham v. Lucas, 24 W. Va. 231; Whitehead v. Latham, 83 N. C. 232.*

A judgment entered the same day, but after the defendant died, is entitled

their respective departments, and the expenses of the whole business should be charged to the different departments, fire and marine, as equitably as possible. It seems that, during a very long period, if not during all their existence, they endeavored to preserve a distinction between the marine and fire insurance. The proof shows that at the very outset circulars were issued, making known this distinction, which circulars were distributed by their agents, containing this language:

"Both fire and marine insurance effected, but no fire notes can be assessed for a marine loss, nor a marine note for a fire loss."

In addition to this by-law and this circular, it appears that the agents of the company faithfully represented the resolution of the

to no priority over his general creditors, *Patterson's Appeal, 96 Pa. St. 93;* see *Miller* v. *Jones, 2 Spears 315; Mitchell* v. *Overman, 103 U. S. 62 ; Clark's Case, 15 Abb. Pr. 227.*

Judgment obtained by a creditor against an executor the same day that a decree was made for the administration of the testator's estate, is entitled to no priority over decedent's simple contract creditors, *Parker* v. *Ringham, 33 Beav. 535;* see *Mills* v. *Jones, 2 Rich. 393.*

A judgment by default obtained on a writ served on the defendant the same day, but before, he was convicted of a felony, is good, *Neale* v. *Utz, 75 Va. 480.*

The lien created on a criminal's property by the Illinois statute takes effect during the entire day on which the arrest is made, and overrides a conveyance of his lands made on that day but before his arrest, *Hitchcock* v. *Roney, 17 Ill. 231;* see *Morgan* v. *Collier, 13 Ga. 493; McKnight* v. *Spain, 13 Mo. 534.*

An order approving a guardian's bond is valid, although not signed until after an order directing him to sell his ward's lands had been made the same day, *Revill* v. *Claxon, 12 Bush 558.*

The general court of Virginia was, by statute, to convene at Richmond on November 15th. One of the judges thereof signed a judgment against the defendant, at Chesterfield, on that day.—*Held,* that the court would judicially notice that the two places were not more than three hours' riding apart, and the judge might therefore have been at Chesterfield in the morning of November 15th, *Mendum* v. *Commonwealth, 6 Rand. 704.*

A marriage by plaintiff at eleven o'clock in the forenoon, when her decree of divorce from a former husband was not obtained until two o'clock in the afternoon of the same day, is valid, *Merriam* v. *Wolcott, 61 How. Pr. 377;* see *Huntington* v. *Charlotte, 15 Vt. 46; Webber* v. *Webber, 83 N. C. 280.*

An execution may issue the same day that the judgment is filed, although before such filing, *Small* v. *McChesney, 3 Cow. 19; Clute* v. *Clute, 3 Denio 263;*

Doane v. Millville Mutual Ins. Co.

company to every one who became members thereof, so that marine policy-holders understood that they were independent of the fire policy-holders, and that the fire policy-holders understood that they were independent of the marine policy-holders.

It is also in evidence that, for a long period of time, if not during the entire existence of the company, the marine branch was much more profitable than the fire branch of the company; so much so that, whilst there was little or nothing in the treasury to the credit of the fire, there was nearly $40,000 to the credit of the marine; and it also appears that at times the former became indebted to the latter by the use of a portion of the money due to the latter, in order that the fire department of the company might be maintained.

The exceptants regard this attempt upon the part of the com-

St. Stephen Bank v. New Brunswick R. R. Co., 5 Allen (N. B.) 629, and note; and before a procedendo is filed below, after the dismissal of an appeal, Shrimp v. Hay, 8 Bradw. (Ill.) 66; and an order for discovery, before the execution is returned, Jones v. Porter, 6 How. Pr. 286.

A judgment by confession and præcipe for fi. fa. were handed by the plaintiff to the prothonotary on Sunday; the next day he entered the judgment and issued execution thereon at six-thirty A. M.—Held, valid, and prior to other executions issued against the defendant at eight A. M. and eight forty-five A. M. the same day, Kauffman's Appeal, 70 Pa. St. 261.

An execution put in the sheriff's hands three hours before a petition to wind up the defendant company was presented, but possession not taken by the officer until three hours after such presentation, is not entitled to priority, London & D. B. Co.'s Case, L. R. (12 Eq.) 190; Green v. Laurie, 1 Exch. 335; but see Woodland v. Fuller, 11 Ad. & El. 859; Cushing v. Arnold, 9 Metc. 23; Golden v. Blaskopf, 126 Mass. 523.

Where the execution was delivered to the sheriff between one and two o'clock in the afternoon, and the bankrupt defendant was surrendered by his bail between six and eight o'clock the same evening, the execution is paramount, Thomas v. Desanges, 2 B. & Ald. 586; Sadler v. Leigh, 4 Camp. 197; Beekman v. Jarvis, 3 U. C. Q. B. 280; Godson v. Sanctuary, 1 Nev. & M. 52, 4 B. & Ad. 255; see Pewtress v. Annan, 9 Dowl. 828; Swain v. Morland, 1 Brod. & B. 370.

Parol evidence is admissible to prove the hour when an execution issued, Allen v. Portland Stage Co , 8 Me. 207; Shore v. Dow, 13 Mass. 529; Herman on Ex. § 271, note 6 : Lang v. Phillips, 27 Ala. 314; or was returned, Bull v. Clarke, 2 Metc. (Mass.) 587; see Rex v. Berks, 5 East 386; but not when a judgment was entered, it seems, Cox v. Hodge, 1 Swan 371, 373; Burney v. Boyett, 1 How. (Miss.) 39; Wiley v. Southerland, 41 Ill. 25.

Doane v. Millville Mutual Ins. Co.

pany to carry on two separate branches of business under their charter as void—*ultra vires ;* hence, as I have said, the question is a serious one. The view, however, which I take of it relieves me from determining, at this stage of the transaction, whether or not it was the intention of the legislature to permit the company to carry on two separate and distinct branches of business. They had the power to insure against risks by sea, and also the power to insure against risks by fire. Whether, by mutual arrangement and agreement, they could fulfill the object of their mission and keep within the law by only applying the profits of the marine department to that department alone, and of the fire to the fire department alone, I am not prepared to decide.

But there is another view to be presented. I am clear that a corporation of this character may be estopped, by its resolutions

If an officer returns a *ca. sa., non est inventus* in the morning, and is sued for a false return, the plaintiff cannot show that he might have arrested the defendant in the *ca. sa.* in the afternoon of the day when he made the return, *Hinman* v. *Borden, 10 Wend. 367.*

A plaintiff in execution, on the last day for the defendant's filing security to stay its issuance, obtained a rule that the sheriff proceed; later on the same day, the defendant offered his securities.—*Held,* that he was guilty of no delay, *Slingluff* v. *Ambler, 2 W. N. C. (Pa.) 67.*

Where a defendant died between eleven and twelve o'clock in the morning, and a *fi. fa.* was sued out against his goods between two and three the afternoon of the same day, it was set aside, *Chick* v. *Smith, 8 Dowl. 357;* see *Wright* v. *Mills, 4 H. & N. 488; McMahon* v. *Glasscock, 5 Yerg. 304.*

Where several writs of attachment were served the same day, the precise hour when each one was served may be proved by parol, *23 Am. Law Reg. (N. S.) 257; Ransom* v. *Halcoti, 9 How. Pr. 119, 18 Barb. 56; Ginsberg* v. *Pohl, 35 Md. 505; Whitney* v. *Butterfield, 13 Cal. 335; Case* v. *Case, 2 Am. Law Reg. 253; Jones* v. *Bonsall, 11 Phila. 561;* see *Long's Appeal, 23 Pa. St. 296; Rockwood* v. *Varnum, 17 Pick. 289; Fairfield* v. *Paine, 23 Me. 498; Garity* v. *Gigie, 130 Mass. 184; Baldwin's Appeal, 86 Pa. St. 483; Steffens* v. *Wanboeker, 17 S. C. 475;* and so of an assignment and an attachment, *Malvin* v. *Sweitzer, 1 Kulp (Pa.) 5;* and a notice to quit and an attachment, *Barrett* v. *Merchants Bank, 26 Grant's Ch. 409;* and an attachment and a deed, *Taylor* v. *Emery, 16 N. H. 359; Hervey* v. *Champion, 11 Humph. 569.*

An assignment for the benefit of creditors executed at ten-fifteen A. M. has precedence over a judgment obtained against the assignor between eleven and twelve A. M. the same day, *Mechanics Bank* v. *Gorman, 8 Watts & Serg. 304;* see *Rex* v. *Earl, Bunbury 33* [criticised in *Rex* v. *Edwards, 9 Exch. 48, 51*];

and by its acts, as well as individuals. The corporation, at its inception, declared that they would carry on the two departments separately, making no other connection between the two than that the expenses of the institution should be as equitably borne by each as possible. This intention was immediately made known by their by-laws, and by their circulars, and by their agents. It cannot, therefore, be said that any individual was misled by supposing that the entire premium notes or assets of the company, whatever they might be, would be subject to the payment of his claims against the company. With his eyes opened, with this important fact before him, he voluntarily became a member of this association. He thus obliged himself to accept these terms, and also obligated himself to every other member of the company that he would see to it that these terms

---

*Clements* v. *Berry, 11 How.. (U. S.) 398;* as to an assignment and a deed, see *Boyer's Estate, 51 Pa. St. 432.*

The burden of proof is on him who claims priority, *Murfree* v. *Carmack, 4 Yerg. 270, (26 Am. Dec. 232, 234, note)* ; *Neff* v. *Barr, 14 Serg. & R. 166; Boyer's Estate, 51 Pa. St. 432; Clark* v. *Duke, 59 Miss. 575;* see *Ladley* v. *Creighton, 70 Pa. St. 490; Stewart* v. *Stewart, 3 J. J. Marsh. 48.*

Acts of bankruptcy may be shown by proving the hour when they were committed, *Godson* v. *Sanctuary, 1 Nev. & M. 52, 4 B. & Ad. 255; Ex parte D'Obree, 8 Ves. 82; Ex parte Dufrene, 1 Ves. & B. 51; Ex parte Bignold, 3 Mont. & A. 9, 13; Wydown's Case, 14 Ves. 87 ; 23 Am. Law Reg. (N. S.) 258.*

An order of bankruptcy entered at four o'clock does not embrace property acquired by the bankrupt by devise after five o'clock the same day, *Petit's Estate, L. R. (1 Ch. Div.) 478;* see *Blair* v. *Carter, 78 Va. 621.*

Where a sale at auction is made in the morning, the auctioneer cannot bind the purchaser, under the statute of frauds, by signing for him in the evening of the same day, *Craig* v. *Godfroy, 1 Cal. 415; Hicks* v. *Whitmore, 12 Wend. 548;* see *Bateman on Auctions \*154; Reed on Stat. Frauds ? 317.*

A policy of insurance referred to another "prior in date." *Held,* that it could be shown to mean one executed earlier the same day, *Brown* v. *Hartford Ins. Co., 3 Day 58.*

Under a power of attorney to confess a judgment "at any time hereafter," judgment may be confessed the same day the power is executed, *Thomas* v. *Mueller, 106 Ill. 36.*

Two applications for the appointment of a receiver were made the same day to different judges—*Held,* that the one first in time should be preferred, *People* v. *Central Bank, 53 Barb. 412.*

The hour when a statute is approved may be shown, *Burgess* v. *Salmon, 97*

were carried out. It was a mutual agreement between all concerned. This simple statement of facts seems to warrant the conclusion that, after the existence of this company for over twenty years, during which entire period all persons becoming interested acknowledged the force of the by-law, and consented thereto, and also to the circular and the action of the agents, it seems to be impossible that the court can declare the action of the company void, without, at the same time, doing great injustice. Each member had a right to take the other at his word; each had a right to confide in the integrity of the company, and in its power to proceed upon the basis indicated; and, if each policy-holder made his investment, and secured a benefit upon the principle involved, how can the court now say to him, "You did an unlawful thing, and the profits or benefits which you ex-

---

U. S. 381; Arrowsmith v. Hamering, 39 Ohio St. 573; 23 Am. Law Reg. (N. S.) 249, and note; see Mallory v. Hiles, 4 Metc. (Ky.) 53; Fowler v. Peirce, 2 Cal. 165; Converse v. Michie, 16 U. C. C. P. 167; Tomlinson v. Bullock. L. R. (4 Q. B. D.) 230, 28 Moak 571, and note; Foust v. Trice, 8 Jones 490.

A statute provided that a specified license should begin on the day it was granted. A prosecution for not having such a license was begun against the defendant at twelve-forty P. M. on October 21st, and at one-ten P. M. the same day he procured a license and exhibited it at the hearing, whereupon he was discharged. Held, that he ought to have been convicted, Campbell v. Strangeways, L. R. (3 C. P. D.) 105, 30 Moak 54

How two inconsistent statutes, relating to the same subject matter, and passed the same day, are to be construed, Knight v. Ocean, 20 Vr. 485.

The actual hour when a justice of the peace took his official oath may be shown, Courser v. Powers, 34 Vt. 517; and appraisers under an execution, Allen v. Portland Stage Co., 8 Me. 207 [criticised in Hall v. Crocker, 3 Metc. (Mass.) 248].

An administratrix ought not to be removed for delay for part of a day in qualifying, Hart's Succession, 7 Rob. (La.) 534; see Kearney v. Andrews, 2 Stock. 70, 74; State v. Gasconage Co., 33 Mo. 102; Carpenter v. Titus, 33 Kan. 7.

As to noticing fractions of a day in criminal cases, see People v. Beatty, 14 Cal. 566; Indianapolis v. Parker, 31 Ind. 230; Pressley v. Marion Co., 80 Ind. 45; Territory v. Thierry, 1 Mart. (La.) 102; Speer v. State, 2 Tex. Ct. of App. 246; Nixon v. State, 2 Sm. & Marsh. 497; and in commercial usages, Bank of Alexandria v. Swann, 9 Pet. 33; First Nat. Bank v. Burkhard, 100 U. S. 686; Benson v. Adams, 69 Ind. 353; and in maritime liens, The Frank G. Fowler, 8 Fed. Rep. 331; and in a pauper's settlement, Reg. v. St. Mary, 1 El. & Bl. 816; Hopewell v. Amwell, Pen. (N. J.) *422.

See, in general, 23 Am. Law Reg. (N S.) 249, note; 3 Alb. L. J. 176.—REP.

pected to derive therefrom you are not entitled to?" Or, how
can the court say to another class that "the action of the com-
pany being contrary to law, you are not only entitled to no
profits or benefits, but you are under obligations to do that
which you did not contract to do?" which must, in this case,
upon the one hand or the other, inevitably be the result, if the
doctrine of estoppel be not applied. For there would be no com-
plaint if it were not the fact that one of those branches has fallen
far short of profit, while the other, for the time being at least,
was very profitable; therefore, let me again ask, How can the
court say to those who are in the branch of the company which
has been profitable, "You are not only not entitled to any credit
because of the profits which have been made in your department,
according to the contract, but you must pay, to the amount of
your premium note, that proportion of indebtedness which the
other branch of the company has incurred?" In what depart-
ment of the law has any such proposition found a foothold? In
what department of equity has it ever been declared that, where
one individual solemnly contracts with another for the purpose
of a particular thing, and they mutually advance money to its
accomplishment, and he irretrievably changes his legal relations,
he is not equally bound? It cannot be said that there is any
fraud. There is no deception. It is admitted that every holder
of a policy had the fullest information. Therefore, it is most
clear that the doctrine of estoppel must apply. If not in such
case, it should be obliterated from our books as a mockery.

Had this question arisen upon the first institution of the com-
pany, or its first publication of this by-law, there would have
been far less difficulty in determining the rights of policy-holders.
It may be that, under such circumstances, a court would feel
itself obliged to say that the charter did not contemplate the
separation of the two branches of business. Doubtless, every
one will admit that the argument presented by the exceptants
to the effect that a single charter cannot be intended to create
two corporations has great force.

It appearing, therefore, that this exception should not prevail,
the next important inquiry is whether the exception presented

by the Woodses is well taken or not. They were members of that company. Before the company was declared insolvent they presented their policies, and, upon the payment of two and one-half per cent., secured a release from all liability, by the cancellation of their policies. The master reported that, under the circumstances, this release or cancellation is not effectual, but that they are still liable for their full proportionate share of the losses and expenses incurred during the life of their policies, and which actually existed at the time of cancellation. This has been excepted to as erroneous; the insistment being that as the company had the right to discharge them, and cancel their policies, and, as they accepted the terms which the company was willing to make, and paid the two and one-half per cent. imposed, they are free from all further liability. In this respect I think the master should be sustained. It may not have been thought, at the time of the cancellation of these policies, that the company was in serious financial embarrassment. But it would seem that of this fact there can be doubt. There can be no doubt that insolvency was then staring the officers in the face. If this be so, what possible right had they to transfer a large proportion of the assets of the company without an adequate·consideration? I do not think it can be contended for a moment that such an act was justifiable. If several thousand dollars' worth of assets could have been thus surrendered, all of the assets of the company could have been so surrendered likewise. A matter so plain, it seems to me, need only to be stated in order to show the substantial rights of the creditors of the company to their claim against the persons whose policies were thus canceled. I conclude, therefore, that they must account and answer for the full amount for which they were liable under the charter and by-laws at the time of the cancellation of their policies, giving them credit for the amount already paid. *Columbia Fire Ins. Co.* v. *Kinyon, 8 Vr. 33; Sands* v. *Hill, 42 Barb. 651; Sterling* v. *Mercantile Ins. Co., 32 Pa. St. 75; ·Commonwealth of Mass.* v. *Mass. Ins. Co., 112 Mass. 116; Cummings* v. *Sawyer, 117 Mass. 30; Smith* v. *Saratoga Ins. Co., 3 Hill 508; St. Louis Ins. Co.* v. *Boeckler, 19 Mo. 135; Hyde* v. *Lynde, 4 N. Y. 387;*

*Nathan* v. *Whitlock, 9 Paige 152; Burke* v. *Smith, 16 Wall. 390; Northampton Ins. Co.* v. *Stewart, 10 Vr. 486; Belleville Ins. Co.* v. *Van Winkle, 1 Beas. 333; Miller* v. *Hillsborough Ins. Co., 15 Stew. Eq. 459.*

The foregoing, I think, presents the discussion, so far as it has been opened before me, with respect to the assets of the company, and the liability of the different members thereof.

The next question is as to the distribution of the assets between judgment and general creditors. The master has reported that the assets of the company are all equitable assets, and, being such, must be distributed equitably; and, as a consequence of that fact, judgment creditors have no preference. The eightieth section of the act respecting corporations (*Rev. p. 191*) provides "that in the payment of creditors and in the distribution of the funds of any such company, the creditors shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been for the purpose of preferring creditors." I do not think words can be so placed as to make language any plainer. The language is not that the creditors should be paid *equally* if the assets of the company are *equitable assets;* nor that the judgment creditors shall have preference out of the *legal* assets of the company. Nothing is said upon the question, one way or the other. It simply declares how they shall be paid, that "in payment of the creditors and in distribution of the funds of any such company." Manifestly the officer who is winding up such company has nothing to deal with, under the statute, upon this point, but *funds*—the proceeds of sales of real and personal estate, or the proceeds of any other assets converted into funds. He is supposed to have converted everything into money—into funds; and these funds he is directed by the statute to make distribution of proportionately amongst the creditors except to mortgage and judgment creditors. The exception on this ground is well taken.

Although the exceptions to the master's report have not raised the question directly, and although the argument of counsel did not present it specifically, yet the conclusion which I have expressed, lastly, and the facts presented in the testimony and in the

master's report, and fully suggested by the argument of counsel, render it necessary that it should be determined at what point a creditor shall cease to acquire any benefit from his diligence in obtaining a judgment. It cannot be that a judgment, recovered at any time before distribution of the funds, comes within the statute, and is to be paid in full, in preference to general creditors. A limit must, therefore, have been intended by the legislature. At what point of time is that limit? Is it at the time of the appointment of the receiver, or of the issuing of the injunction, or of an order to show cause why an injunction should not issue and a receiver be appointed, with a restraining clause forbidding the company from collecting any moneys, or paying or discharging any debts, or transacting any business whatsoever, or is it the filing of the bill? It seems to me that the true spirit and intent of the act to limit the period at which a judgment may be recovered and the creditor secure the benefit of the priority contemplated by the statute, is whenever the court, according to the directions of the statute, wholly or partially takes control of the company and of its assets, either by injunction or other preliminary order, thereby depriving the company of all power to act in the premises, except under the direction and by the consent of the court itself. When the court takes either of these steps, the hands of all parties—the company and its agents and creditors, including judgment and execution creditors—are all alike stayed ; no one of them can proceed with any effect toward the payment of a debt, or the enforcing of a judgment by execution or otherwise. · It is true the creditor may obtain his judgment, and thereby certify his claim, but he cannot seize upon the assets of the company, nor can the company discharge the judgment by payment. Therefore, at and after the juncture of filing the bill and issuing a restraining order or injunction, it would seem that no proceedings could be made effectual by a suitor against the company or its assets, both being in the custody of the law. This very wise and salutary principle is universally recognized.

In this same connection another question was presented by the concurrence of events, a judgment having been entered upon the day that the bill of complaint was filed and the restraining order

issued.   On which side of the line does the judgment creditor in
such case stand ?   If the court undertakes to classify him with
judgment creditors, upon what principles shall it be done ?   I
can discover no principle which secures to him any priority over
general creditors.   As the law, in such cases, knows no parts of
days, a judgment entered on the day of obtaining the restraining
order would be excluded.   As already intimated, the court, by
its order, forbids the defendant company from paying ; this being
lawful, I do not see by what method the judgment creditor could
compel payment by execution, and, since he cannot do this, I
cannot see how he could acquire a preference.   In other words,
when the court steps in and takes possession, all opportunity for
any one obtaining an advantage by his diligence ceases.   *Johnson
v. Pennington, 3 Gr. 188 ; Thomas v. Desanges, 2 B. & Ald.
586 ; Regina v. St. Mary, 1 El. & Bl. 816.*   As the case stands,
this principle governs.

A loss occurred after the appointment of a receiver.   The
policy-holder insists that he is entitled to share in the distribu-
tion of the assets of the company.   Against his claim the master
has reported ; to this there is an exception.   So far as this ques-
tion has been considered by the courts, the master is right.

When a company of this character becomes insolvent, and
passes into the hands of a receiver, it ceases to be for all pur-
poses, except that declared by the statute, the winding up of its
affairs according to the directions of the statute permitting its
existence, under which it was created and subject to which it
necessarily always is.   Every person becoming a member of such
company is subjected to all the provisions, conditions or limita-
tions of the statute.   He has no reason to complain because they
are part of the bargain.   Notwithstanding the apparent hardship
in which such policy-holder finds himself, it is less troublesome
to the cautious, and less obnoxious to reason, than at first appears.
He had it in his power to provide against the contingency which
involved him in the loss he sustained, and which he now seeks
to recover of this company.   He could have secured other insur-
ance, and, by the insolvency of this company, was warned so to
do if he expected relief from such disaster.   *Mayer v. Attorney-*

*General, 5 Stew. Eq. 815 ; Dean's Appeal, 98 Pa. St. 101 ; Commonwealth* v. *Massachusetts Ins. Co., 119 Mass. 45.*

. I will advise a decree in accordance with these views. The prevailing party is entitled to costs.