ELIE CAVIGLIA & another *vs.* A. VIRGINIA HENRY, administratrix, & others.

Suffolk.    January 5, 6, 1950. — July 7, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Probate Court*, Jurisdiction, Foreign will.   *Will*, Foreign will.

There was a failure to produce in a Probate Court the kind of document necessary as the foundation of a proceeding under G. L. (Ter. Ed.) c. 192, §§ 9, 10, for allowance of a notarial will made in France and valid there without probate, where a photostatic copy of the will and of the "notarial act" embodying it and a verified translation were produced and it appeared that "the proper official" "entitled by law to the custody of wills" in France "would certify that the original of the will" was "on file with" him and that his acts would be certified by the United States consul as entitled to full faith and credit, but no copy of the will or of an official record thereof duly authenticated by an officer as being a copy of something in his custody was produced.
A Probate Court has no jurisdiction to entertain a proceeding under G. L. (Ter. Ed.) c. 192, §§ 9, 10, for allowance of a foreign will unless a proper document of the character specified by § 9 is produced.

PETITION, filed in the Probate Court for the county of Suffolk on May 12, 1947.

The case was heard by *Dillon*, J.

*H. L. Barrett*, (*A. W. Coolidge* with him,) for A. Virginia Henry, administratrix, and others.

*H. A. Reynolds*, for Herman Henry.

*T. Chase*, (*R. E. David* with him,) for the petitioners.

QUA, C.J.   This is a petition brought under G. L. (Ter. Ed.) c. 192, §§ 9, 10,[1] praying that a copy of the will. of

_____

[1] "Section 9.    A person interested in a will which has been proved and allowed in any other of the United States or in a foreign country according to the laws of such state or country, or in a will which, by the laws of th: state or country in which it was made, is valid without probate, may produce to the probate court in any county where there is any property, real or personal, on which such will may operate, a copy of such will and of the probate thereof, duly authenticated, or, if such will is valid without probate as aforesaid, a copy of the will or of the official record thereof duly authenticated by the proper officer having custody of such will or record in such state

Samuel Goldstein, late of Cannes in France, be filed and recorded. From a decree in favor of the petitioners, A. Virginia Henry, who had previously been appointed administratrix of Goldstein's estate upon her allegation that he had died intestate, and certain heirs at law appeal.

We are constrained to hold that an unfortunate defect in the proceedings at the very outset requires dismissal of the petition. Sections 9 and 10 provide for the filing and recording in this Commonwealth of copies of two classes of foreign wills, (1) wills which have been proved or allowed in another State or country, and (2) wills which by the law of the State or country in which they were made are valid without probate. Where the will is of the first class the petitioner must produce to the Probate Court a copy of the will and of the probate thereof, "duly authenticated," but if the will is of the second class the petitioner must produce to the Probate Court "a copy of the will or of the official record thereof duly authenticated by the proper officer having custody of such will or record in such state or country." The statute then goes on to say that the court "shall thereupon assign a time and place for a hearing and cause notice thereof to be given to all persons interested . . . ." In this case, the alleged will was made in France, and there is no evidence and no contention that it was ever probated there. The contention of the petitioners is that it is what is sometimes called a notarial will, and that in the circumstances of this case it is valid in France without probate. It therefore belongs to the second class of wills mentioned in the statute. But although there was produced what is claimed to be a photostatic copy of the alleged will and of the "notarial

or country; and the court shall thereupon assign a time and place for a hearing and cause notice thereof to be given to all persons interested by publication in a newspaper three weeks successively, the first publication to be thirty days at least before the time assigned for the hearing. [See now amendment to this section by St. 1950, c. 390.]

"Section 10. If at such hearing the court finds from the copies before it and any additional proof as to the authenticity and execution of the will that the instrument ought to be allowed in this commonwealth as the last will of the deceased, it shall order the copy to be filed and recorded, and the will shall then have the same effect as if it had been originally proved and allowed in the probate court in the usual manner."

act" which embodied it and a translation by a "sworn translator" whose signature was elaborately verified, there was produced no copy of the will or of any official record thereof "duly authenticated" by any officer as being a copy of anything in his custody. There was a failure to produce the document which according to the terms of the statute lies at the foundation of the whole proceeding and which is the basis for the issuance of the citation.

It is true that at the hearing it was orally agreed between counsel for the petitioners and counsel for the parties who appeared in opposition that "the proper official in Cannes, France, would certify that the original of the will presented for probate is now on file with the proper official in France, such official being a person entitled by law to the custody of wills . . ." and that the United States consul at Nice would certify that the acts of such official are entitled to full faith and credit. But this was not the "copy of the will or of the official record thereof duly authenticated by the proper officer having custody of such will or record" which the statute requires. At most it was only evidence that such duly authenticated copy could probably be obtained. By no means could it do away with the necessity of obtaining the copy and producing it as the foundation of the proceeding. The production of the copy is made by the statute a jurisdictional prerequisite. The purpose of the copy is not alone to serve as proof at the hearing that such a will has been made, but is also first to indicate to the court that there is proper ground for the issuance of a citation and later to remain permanently on file so that all the world may see it as an authentic record of the contents of the will in lieu of the original will itself which would be on file if it were a domestic will. See St. 1785, c. 12, § 1; St. 1879, c. 185, § 1. The statute makes this requirement. Its meaning is plain. There is nothing to do but to comply with it. As was said in *Mitchell* v. *Mitchell*, 312 Mass. 154, at page 162, "Where, as here, the Legislature has prescribed the method of procedure, we are of opinion that it is a prerequisite to the exercise of the jurisdiction of the

court that that method be followed." *Assessors of Boston
v. Suffolk Law School,* 295 Mass. 489. *Davis* v. *McGraw,*
206 Mass. 294. *Patrick* v. *Dunbar,* 297 Mass. 40, 42.
·*Beloin* v. *Bullett,* 310 Mass. 206. *Zalis* v. *Ksypka,* 315
Mass. 479, 482. *Dixon* v. *Clarke,* 323 Mass. 85.

Since the court was without jurisdiction to enter the
decree, the decree must be reversed and the petition dis-
missed without prejudice to the filing of a new petition upon
production of the necessary duly authenticated copy of the
will, or of an official record thereof.          *So ordered.*