INSURANCE COMPANY OF NORTH AMERICA & another *vs.*
COMMISSIONER OF INSURANCE & another.

Suffolk.    May 14, 1951. — October 19, 1951.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Insurance*, Payment of premium; Rating; Insurance company; Com-
missioner of insurance; Fire insurance: payment of premium, rating.
*Corporation*, Insurance company. *Jurisdiction*, By consent or waiver.
*Administrative Board or Officer.*

An insurance company has the corporate power in selling insurance to
allow the payment of the premium to it by instalments.

A rule of a fire insurance rating organization requiring that premiums be
due and payable upon the effective date of the insurance and for-
bidding altogether permitting payment of premiums to the companies
by instalments was not a rating rule or a rule affecting rates and could
not be the subject of an application to the commissioner of insurance
by a member or subscriber of the organization for permission to
deviate under § 9 of G. L. (Ter. Ed.) c. 174A, inserted by St. 1947,
c. 614, § 1.

The validity of a rule of a fire insurance rating organization was not
open to attack by a member or subscriber thereof upon an application
to the commissioner of insurance for permission to deviate from the
rule under § 9 of G. L. (Ter. Ed.) c. 174A, inserted by St. 1947, c. 614,
§ 1.

Consent or waiver by parties cannot confer upon an administrative
tribunal jurisdiction over a cause not vested in such tribunal by law.

An order by the commissioner of insurance, denying an application under
§ 9 of G. L. (Ter. Ed.) c. 174A, inserted by St. 1947, c. 614, § 1, by a
member or subscriber of a fire insurance rating organization for per-
mission to deviate from a rule of the organization which was of such a
nature that it could not be the subject of such an application, was
right in its result and was affirmed on appeal under § 18 (c), although
the commissioner's decision, based on the merits of the proposed
deviation, contained some errors of law.

APPEAL, filed in the Supreme Judicial Court for the
county of Suffolk on February 19, 1951, from an order by
the commissioner of insurance.

The case was reserved and reported by *Wilkins*, J.

*E. O. Proctor, & J. C. Phillips* of Pennsylvania, for Insurance Company of North America and another.

*C. B. Rugg, (J. W. Downs & W. F. Farr* with him,) for New England Fire Insurance Rating Association.

*C. H. Walters,* Assistant Attorney General, for the commissioner of insurance.

WILKINS, J.    This is an appeal by Insurance Company of North America and its wholly owned subsidiary, Philadelphia Fire and Marine Insurance Company, Pennsylvania corporations authorized to engage in the business of fire insurance in this Commonwealth, from a decision and order of the commissioner of insurance.[1]   G. L. (Ter. Ed.) c. 174A, § 18 (c), inserted by St. 1947, c. 614, § 1.   The single justice reserved and reported the case upon the pleadings, his findings of fact, and the record, including a report of the evidence, of the proceedings before the commissioner.   G. L. (Ter. Ed.) c. 211, § 6;  c. 231, § 111.

## NEW ENGLAND FIRE INSURANCE RATING ASSOCIATION AND ITS RULE 52.

The controversy stems from a rule of New England Fire Insurance Rating Association, which participated in the proceedings before the commissioner and was allowed to intervene in the case at bar by the single justice.   This unincorporated association of stock companies (hereinafter called the association) is a licensed rating organization for fire and allied lines of insurance.   G. L. (Ter. Ed.) c. 174A, § 8, inserted by St. 1947, c. 614, § 1.   It has been in existence for many years and operates in all the New England States except New Hampshire.   From time to time the association has published rules, and, since the effective date of St. 1947, c. 614, has filed them on behalf of its members and subscribers with the commissioner of insurance.

---

[1] At the time of the hearing and of the order, which was dated February 14, 1951, the commissioner was Charles F. J. Harrington.   He was succeeded in office on February 21, 1951, by Dennis E. Sullivan, who has been substituted as appellee.

One rule, numbered 52, originally adopted in 1932, at the present time used by all the rate making associations in the country, and now contained in the association's manual of rules filed with the commissioner, is the following: "All premiums are due and payable on the day that the insurance takes effect. Note. — Any agreement (whether a condition of the policy or otherwise) permitting the payment of premiums to .the company on an installment plan, or which defers the payment of the premium to the company shall be considered as in violation of this rule."

Insurance Company of North America and Philadelphia Fire and Marine Insurance Company (hereinafter referred .to collectively as North America) are now subscribers, and formerly were members, of the association. When they became members in 1937, each signed an agreement to observe all the rules and rates of the association. Such action is required of all members and subscribers. North America has never repudiated that agreement, nor at any time asked the association to make any change in its rules. The two companies ceased to be members, and became subscribers, in April, 1950. Their applications for approval of deviation, which are the subject of the commissioner's order complained of in the case at bar, were filed while they were still members.

THE FIRE, MARINE, AND INLAND MARINE REGULATORY
LAW.

Effective October 1, 1947, the Legislature enacted the fire, marine, and inland marine regulatory law. G. L. (Ter. Ed.) c. 174A, inserted by St. 1947, c. 614, § 1.[1] This was due to the decision in *United States* v. *South-Eastern Underwriters Association,* 322 U. S. 533, which held that the business of fire insurance is "commerce among the several States," thus departing from a conception prevailing since *Paul* v. *Virginia,* 8 Wall. 168. Congress then enacted the

---

[1] Effective at the same time was the casualty and surety rate regulatory law. G. L. (Ter. Ed.) c. 175A, inserted by St. 1947, c. 641, § 1.

McCarran act, 59 U. S. Sts. at Large, 33, U. S. C. (1946 ed.) Title 15, §§ 1011–1015, because State regulation of insurance and coöperative action by insurers, long undertaken through rating associations, were alike imperiled. The McCarran act declared the continued State regulation of the business of insurance to be in the public interest, and suspended the application of the Federal anti-trust laws in any event until June 30, 1948, and thereafter to the extent that such business is regulated by the States.[1] 61 U. S. Sts. at Large, 448. During the period of delay thus afforded, model laws were prepared by the National Association of Insurance Commissioners in coöperation with a committee of the insurance industry.[2] These have now been adopted with few changes in almost every State.[3] Two such laws are G. L. (Ter. Ed.) c. 174A and c. 175A. Compare G. L. (Ter. Ed.) c. 176D, inserted by St. 1947, c. 659.

The self declared purpose of c. 174A is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory, and to authorize and regulate co-operative action among insurers in rate making and in other matters within the scope of this chapter. Nothing in this chapter is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit, or encourage, except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This chapter shall be liberally interpreted to carry into effect the provisions of this section." § 2.

An insurer is required to file with the commissioner "every manual, minimum, class rate, rating schedule or rating plan, every other rating rule, . . . and every modification of any of the foregoing which it proposes to use." § 6 (a). "Rates shall not be excessive, inadequate or unfairly discrimina-

---

[1] The McCarran act has been held constitutional. *Prudential Ins. Co.* v. *Benjamin,* 328 U. S. 408.

[2] Proceedings of the Seventy-Seventh Annual Session of the National Association of Insurance Commissioners (1946) 355–357, 410 et seq.

[3] Donovan, Regulation of Insurance under the McCarran Act, 15 Law & Contemporary Problems, 473, 485.

tory." § 5 (a) 2. "An insurer may [but need not] satisfy its obligation to make such filings by becoming a member of, or a subscriber to, a licensed rating organization which makes such filings, and by authorizing the commissioner to accept such filings on its behalf." § 6 (b).

Anyone may apply to the commissioner for a license as a rating organization. If the commissioner finds that the applicant is competent, trustworthy, and otherwise qualified to act, "and that its constitution, articles of agreement or association or certificate of incorporation, and its by-laws, rules and regulations governing the conduct of its business conform to the requirements of law, he shall issue a license . . . ." § 8 (a). Subject to rules and regulations approved by the commissioner as reasonable, each rating organization shall permit any insurer qualifying thereunder, not a member, to be a subscriber to its rating services, and shall furnish its rating services without discrimination to its members and subscribers. Refusal to admit any qualified insurer to subscribership is subject to review by the commissioner. § 8 (b).

Unlike the "rules and regulations governing the conduct of its business," referred to in § 8 (a), and those which must be "approved by the commissioner as reasonable" under § 8 (b), the association's rates, rating rules, schedules, and plans, referred to in § 6, become effective upon filing without preliminary approval.[1] But, in case of the latter, the commissioner may at any time of his own motion or upon the request of a person or organization aggrieved, find that a filing in effect does not meet the requirements of c. 174A, and may render the filing ineffective. § 7 (a), (b). There is also an appeal to the commissioner by a member or subscriber from the action or decision of a rating organization in approving or rejecting any proposed change in, or addition to, the filings. The commissioner may order the addition made if he finds a rejection was unreasonable. § 10.

---

[1] The Regulations of Insurance Rates, 47 Col. L. Rev. 1314, 1329.

"[N]o insurer shall make or issue a contract or policy except in accordance with the filings which are in effect for said insurer." § 6 (e). A member or subscriber "shall adhere to the filings made on its behalf" by a rating organization with the exception that it may apply in writing to the commissioner "for permission to file a deviation from the class rates, schedules, rating plans or rules respecting any kind of insurance, or class of risk within a kind of insurance, or combination thereof." The application must "specify the basis for the modification," and a copy must be sent simultaneously to the rating organization. The commissioner must hold a hearing unless the rating organization advises him that none is desired, and the applicant consents. "In considering the application for permission to file such deviation the commissioner shall give consideration to the available statistics and the principles for rate making as provided in section five. The commissioner shall issue an order permitting the deviation for such insurer to be filed if he finds it to be justified and it shall thereupon become effective. He shall issue an order denying such application if he finds that the resulting premiums would be excessive, inadequate or unfairly discriminatory. Each deviation permitted to be filed shall be effective for a period of one year from the date of such permission unless terminated sooner with the approval of the commissioner." § 9.

NORTH AMERICA'S VARIOUS APPLICATIONS FOR APPROVAL OF DEVIATION.

From October 1, 1947, until 1950 the commissioner, without any opposition by the association, permitted North America to deviate from the rules of the association in the use of an "instalment premium indorsement," which provides, contrary to Rule 52 of the association, that premiums on fire insurance policies written for terms of three years or more may be paid in instalments. North America has written policies on that basis. On March 6, 1950, North

America made written applications to the commissioner for "renewal of permission to deviate." For the first time the association asked to be heard. There was a hearing before a deputy commissioner designated by the commissioner under G. L. (Ter. Ed.) c. 26, § 7. In addition to Rule 52, permission was requested to deviate from Rules 67, 2C, 21A, and 51[1] because of the so called automatic reinstatement provision hereinafter referred to. The deputy commissioner in a decision approved the applications. The association appealed to the commissioner. G. L. (Ter. Ed.) c. 26, § 7. The commissioner, after reviewing the action of the deputy commissioner, rendered a decision disapproving the applications and ordered North America to cease and desist from using the instalment premium indorsement.

## THE INSTALMENT PREMIUM INDORSEMENT AND THE TERM RULE.

The instalment premium indorsement relates only to policies written under the term rule, which is numbered 78 in the association's manual of rules. The term rule has been in general use for many years, and for certain risks allows a discount in the purchase of insurance for two, three, four, or five years. A policyholder who procures insurance for any of those terms pays in advance an amount which is the total of the full annual premium for the first year plus

---

[1] Rule 67 in part is: "Reinstatement of policy to the original amount (or less) to expiration may be made on a pro rata basis by endorsement, but such endorsement may only be made subsequent to the loss, other than as permitted by Rule 2C. The rate to be used shall be that applying at the time the endorsement is made."

Rule 2C, in so far as material, is: "When an Automatic Reinstatement of Loss Clause is desired, the following clause shall be used, unless otherwise specifically provided.

"Note — In case of losses exceeding One Hundred Dollars ($100) per policy, except dwellings written under broadened dwelling form, reinstatement must be accomplished by endorsement in the usual manner.

"Automatic Reinstatement of Losses

"The amount of insurance hereunder involved in a loss payment of not more than One Hundred Dollars ($100) under this policy shall be automatically reinstated."

Rule 21A relates to dwelling and contents forms, and Rule 51 to unearned premium insurance.

seventy-five per cent of the annual rate for each additional year. [1]

The instalment premium indorsement grants to policy-holders the right to pay in annual instalments, the first instalment being equal to the premium for a one-year policy and the later instalments being seventy-eight per cent of the premium for a one-year policy. This means that after the first year payments under the indorsement are three per cent more than the rate paid in advance by other policy-holders.

The indorsement also contains a so called "automatic re-instatement clause," which provides that the amount of coverage is not to be reduced upon payment of a loss. This feature is not in accord with the usage of fire insurance companies, which reduce coverage to the extent of a loss paid during the term of a policy. It is also contrary to the rules of the association (other than Rule 52) from which a deviation was sought.

North America introduced the instalment premium indorsement, because many policyholders made it a practice to borrow from financial institutions to pay the term premium in advance.

### The Basis and Scope of Judicial Review.

The authority for the appeal is c. 174A, § 18 (c), which reads in part: "Any order or decision of the commissioner . . . shall be subject to review, which shall be on the basis of the record of the proceedings before the commissioner and shall not be limited to questions of law, by appeal to the supreme judicial court at the instance of any party in interest. . . . The court may, in disposing of the issue

---

[1] The exact wording of this part of Rule 78 is: "Buildings and contents are eligible to be written for term at reduced multiples of the annual rate, except as specifically provided below. These reduced multiples are:

| | |
|---|---|
| Two years | $1\frac{3}{4}$ times the annual rate |
| Three years | $2\frac{1}{2}$ times the annual rate |
| Four years | $3\frac{1}{4}$ times the annual rate |
| Five years | 4 times the annual rate |

or in other words, 75% of the annual rate for each additional year or pro rata thereof for part of each additional year."

before it, modify, affirm or reverse the order or decision of the commissioner in whole or in part." The review embraces questions of law, and, on the factual side, a reëxamination of the proceedings already concluded before the commissioner in order to determine whether his findings had reasonable support in the evidence. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 546–547. *Ott* v. *Board of Registration in Medicine,* 276 Mass. 566, 571. *Mayor of Everett* v. *Superior Court,* 324 Mass. 144, 146. See *Brest* v. *Commissioner of Insurance,* 270 Mass. 7, 12–13.

## THE DECISION OF THE COMMISSIONER.

The commissioner in his decision stated that the question whether an insurance company might extend credit to its policyholders has never been before the courts of this Commonwealth for decision; that our insurance statutes restrict the powers of insurance companies so as to preclude the instalment payment of premiums or the extension of credit beyond ninety days; that instalment plans based upon the term rule cannot be approved pending a determination as to the legality of that rule; that Rule 52 merely restates the Massachusetts law, and is properly contained in the association's manual; that the instalment premium indorsement is "unfairly discriminatory" because its privileges would not be available to all policyholders, the term rule not being applicable to all classifications; and that it is unnecessary to consider other features of the indorsement which may not comply with c. 174A.

As the commissioner ruled, his function was to review the proceedings before the deputy commissioner. G. L. (Ter. Ed.) c. 26, § 7.[1] The latter refused to receive testimony concerning the term rule. The commissioner treated that

[1] The statute somewhat resembling G. L. (Ter. Ed.) c. 174A, § 18 (c), in this respect reads: "any person aggrieved by any finding, ruling or decision rendered upon a hearing authorized by law held before a person other than the commissioner, may . . . appeal therefrom to the commissioner who shall review the case and may modify, affirm or reverse such ruling, finding or decision."

rule as of doubtful validity. In the view we take, we find it unnecessary to discuss this aspect of the appeal.

## CORPORATE POWER TO SELL FIRE INSURANCE ON THE INSTALMENT PLAN.

We are of opinion that the commissioner was in error in holding that Rule 52 was declaratory of existing law and that North America lacked corporate power to sell fire insurance on the instalment plan. Massachusetts business corporations, in general, have power to undertake transactions which are fairly incidental or auxiliary to the main business. *Teele* v. *Rockport Granite Co.* 224 Mass. 20, 25. *American Surety Co.* v. *14 Canal Street, Inc.* 276 Mass. 119, 125. *MacRae* v. *Selectmen of Concord*, 296 Mass. 394, 398. One such power is to sell on credit. Passing fire insurance companies for the moment, under our statutes this principle seems equally applicable to insurance companies in general. General Laws (Ter. Ed.) c. 155, the general statute relating to domestic corporations, § 1, as appearing in St. 1935, c. 297, § 1, reads, "The provisions of this chapter, unless expressly limited in their application, shall apply to all corporations created by or organized under the laws of the commonwealth, except in so far as they are inconsistent with other provisions of law relative to particular corporations or classes of corporations . . .." And in the general statute relating to the incorporation of insurance companies, it is provided, "The general provisions of law relative to the powers, duties and liabilities of corporations shall apply to all incorporated domestic companies, so far as pertinent and not in conflict with other provisions of law relative to such companies or with their charters." G. L. (Ter. Ed.) c. 175, § 30.

According to the undisputed evidence before the commissioner, it is the practice of insurance companies in general, apart from fire insurance companies, to write policies upon credit. We are unable to see why under our statutes fire insurance companies should be thought impotent in

this respect. We are of opinion that there is nothing in G. L. (Ter. Ed.) c. 155 or c. 175 which renders them thus inferior. Indeed, the commissioner's ruling was contrary to the implication, if not the express statement, of many of our decisions. *White* v. *Connecticut Fire Ins. Co.* 120 Mass. 330, 332. *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358, 374. *Green* v. *Star Fire Ins. Co.* 190 Mass. 586, 597. *Michelson.* v. *Franklin Fire Ins. Co.* 252 Mass. 336, 339–340. *Shumway* v. *Home Fire & Marine Ins. Co.* 301 Mass. 391, 394–395. See *Union Ins. Co.* v. *Hoge,* 21 How. 35, 65–66.

The commissioner in his decision relied upon three provisions of the insurance statute, which, in our opinion, do not support his conclusion. The first is the standard form of fire policy, which recites the receipt of a consideration in dollars for the company's promise to insure. G. L. (Ter. Ed.) c. 175, § 99, as amended. See now St. 1951, c. 478, § 1. Vance, Insurance (2d ed.) §§ 27, 72. But the same section permits modification of the standard form except in certain enumerated respects, none of which concerns the recital of consideration or the method of payment of premiums, and none of which is now material. § 99, Eighth; Ninth, as appearing in St. 1934, c. 95.

The second provision referred to by the commissioner is § 25, Form A, Assets, item 29, which requires a separate reporting of agents' balances representing business written more than three months before the date of the statement. His conclusion that this was not intended as an alteration of § 99 may be conceded. See G. L. (Ter. Ed.) c. 175, § 187D.

The third provision cited by the commissioner is § 193B, inserted by St. 1937, c. 314, entitled "An Act authorizing the payment of motor vehicle insurance premiums in instalments." Section 193B reads: "Insurance companies may accept payment of motor vehicle insurance premiums in instalments under plans, rates and charges approved by the commissioner as equitable and nondiscriminatory." In spite of its title, this statute did not confer authority to

write such insurance on the instalment plan. Our legislation as it then stood and our judicial decisions already recognized the existence of such a power. G. L. (Ter. Ed.) c. 175, § 113A (2), as appearing in St. 1933, c. 145, § 1; § 113A (2)A, added by St. 1933, c. 145, § 2, and amended by St. 1935, c. 296, § 1; § 113A (3); § 113A (6), as appearing in St. 1936, c. 272 (see now St. 1949, c. 693, § 1). *Union Mutual Casualty Ins. Corp.* v. *Insurance Budget Plan, Inc.* 291 Mass. 62, 68. *Paloeian* v. *Day,* 299 Mass. 586. *Greenberg* v. *Flaherty,* 306 Mass. 95. We think that § 193B was enacted in order to embrace approval by the commissioner.

The commissioner could not rely upon a letter of his predecessor to the Governor which was not introduced in evidence. *American Employers' Ins. Co.* v. *Commissioner of Insurance,* 298 Mass. 161, 166–167. *Boott Mills* v. *Board of Conciliation & Arbitration,* 311 Mass. 223, 227. *Fort Pond Inn Co.* v. *Director of the Division of Employment Security,* 324 Mass. 281, 285.

### NORTH AMERICA'S POWER TO SELL FIRE INSURANCE ON THE INSTALMENT PLAN.

The two companies with which we are now concerned are foreign, and not domestic, corporations. They cannot engage in any business here the transaction of which is not permitted by the laws of this Commonwealth. G. L. (Ter. Ed.) c. 181, § 2. See G. L. (Ter. Ed.) c. 175, § 5, as amended by St. 1933, c. 107, § 2. On the other hand they may, so far as at present material, conduct any business which a domestic company may conduct and which is permitted by the law of the State of their incorporation. By the Pennsylvania corporation law, a corporation is expressly empowered "To enter into any obligation necessary to the transaction of its ordinary affairs." Purdon's Pa. Stat. Anno. Title 15, § 1.

We conclude that North America had power to sell fire insurance on the instalment plan in this Commonwealth.

## The Question whether there was Error in Disapproving the Applications for Deviation.

We come to the question whether there was error in denying the right to file a deviation. The commissioner deemed it necessary to consider only Rule 52.

## Rule 52 is not a Rating Rule or a Rule Affecting Rates.

An application for permission to file a deviation is governed by § 9. A deviation must be from a rating rule, or at least from a rule affecting rates. This is manifest from the statute itself. See particularly §§ 9, 5, 6. A fundamental issue is whether Rule 52 is such a rule, particularly when considered in connection with the term rule. The commissioner made no finding on this crucial point, although he found, in the language of § 9, that the "plan" is "unfairly discriminatory," and stated that Rule 52 is declaratory of existing law. The deputy commissioner, on the other hand, held that it is not a rating rule, a conclusion squarely accepted before us by the association. We are of opinion that Rule 52 is not a rating rule or a rule affecting rates. It purports to be a complete prohibition of instalment selling, and does not attempt to regulate charges for permitted extensions of credit. Accordingly, Rule 52 cannot be the subject of an application for permission to file a deviation.

## In this Proceeding under Section 9 there was no Error in Disapproving the Applications.

The position of North America with respect to Rule 52 in the proceedings before the commissioner was, primarily, that the rule was ultra vires the association, and only in the alternative was a deviation from that rule sought. But in an application for a deviation under § 9 the validity of the rule was not open. There can be, in truth, a deviation only from a valid rule. Compare § 7 (b). And this is equally

Insurance Co. of North America v. Commissioner of Insurance.

true even though deviation from other and apparently valid rules was sought at the same time.

The deputy commissioner in his decision mentions that at a conference in the commissioner's office several weeks before the hearing the parties agreed that the hearing should be under § 9. This is of no avail. Consent or waiver by parties cannot confer upon an administrative tribunal, any more than upon a court, jurisdiction over a cause not vested therein by law. *Assessors of Boston* v. *Suffolk Law School*, 295 Mass. 489, 495. *Caviglia* v. *Henry*, 326 Mass. 246.

We do not reach questions arising out of the absence of any finding, necessary under § 9, that the deviation was "justified." Nor do we reach the question whether the commissioner lacked reasonable support in the evidence or erred as matter of law in saying, "because the 'term rule' is not applicable to all classifications, the plan is unfairly discriminatory." We also are not required to deal with the contentions of the commissioner and of the association that the commissioner has no jurisdiction to release insurers from contractual obligations, in this case, the promise to abide by the rules of the association which North America made upon becoming members in 1937. The rules, it is argued, are still binding upon them as subscribers notwithstanding the enactment of c. 174A.

If there be other questions which have been argued but not decided, it will be possible to raise them in another proceeding, brought by appropriate procedure. In that event, there will be an opportunity for a determination based upon a full finding of the facts by the commissioner in conformity with this opinion.

### CONCLUSION.

The result is that in this proceeding under § 9 North America cannot attack Rule 52 as invalid; and that, although there were some errors of law in the decision of the commissioner, no error appears in the denial of the applications for deviation.               *Order affirmed.*